UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | NO. 3:13-cr-00097-16 |
| | ) | JUDGE SHARP |
| KYLE OAKLEY | ) | |

PETITION TO ENTER A PLEA OF GUILTY

I, **KYLE OAKLEY**, respectfully represent to the Court as follows:

1) My true full name is KYLE OAKLEY and I was born on 9/29/86 and I am 27 years old and have completed 15 years of formal education.

(2) My court appointed attorney is R.N. "Bo" Taylor.

(3) I have received a copy of the indictment before being called upon to plead and have read and discussed it with my lawyer, and believe and feel that I understand every accusation made against me in the indictment.

(4) I have had sufficient opportunity to discuss with my lawyer the facts and surrounding circumstances concerning the matters mentioned in the indictment. My lawyer has counseled and advised with me as to the nature and cause of every accusation against me. We have thoroughly discussed the government's case against me and my potential defenses to the government's case. My lawyer has explained each element of the crime charged to me and what the government would offer to prove these elements beyond a reasonable doubt.

(5) I understand that the statutory penalty for the offense with which I am charged is,

a. as to Count ONE:

i. Not more than 20 years imprisonment,
ii. Fine of up to $1,000,000.00,
iii. A mandatory $100 special assessment, and
iv. Not less than 3 years of supervised release.

(6) I have been advised that I will be sentenced to a sentence sufficient but not greater than necessary to satisfy the goals of sentencing specified in 18 U.S.C. §3553(a). One consideration will be Guidelines established by the United States Sentencing Commission. I understand that these Guidelines are advisory, but that the Court must take account of the Guidelines together with other sentencing goals. My lawyer and I have discussed the calculation of the Guidelines in my case. My lawyer has given me an estimate of the Guidelines range that may apply in my case. I realize that this is simply my lawyer's estimate that the Guideline range in my case is 8 to 14 months. I understand that my advisory Guideline range will be calculated by the United States Probation Officer who prepares the presentence report in my case. This estimation is subject to challenge by either me or the government, unless prohibited by a plea agreement. The final Guideline calculation will be made by the Court. I further understand that I may be sentenced to a fine to be calculated

through the Guidelines. No fine will be imposed if the Judge finds me unable to pay any fine. Considered in this fine may be the amount of financial loss to the victim or gain to me as well as the costs of any confinement or probation supervision. The Court may also order that restitution be made to any victim of the offense. [If I am convicted of any offense specified in 18 U.S.C. § 3663A(c), or as otherwise required by law, restitution is mandatory.] I have a right to a review of my sentence by the United States Court of Appeals for the Sixth Circuit unless waived in the plea agreement.

(7) I understand that I am not eligible for a sentence of probation if I receive any sentence of imprisonment or am convicted of a Class A or Class B felony punishable by twenty or more years imprisonment. I have been informed that under the present federal sentencing system there is no parole. I will receive only 54 days good time per year and it will not vest until the end of each year. I further understand that if I am sentenced to a period of supervised release and I violate the terms of that supervised release, upon revocation I could be imprisoned again.

(8) I understand that should this plea of guilty be accepted, I will be a convicted felon in the eyes of the law for the rest of my life. This means, under present law that (a) I cannot vote in Tennessee, unless my right to vote is lawfully restored, and may not be eligible to vote in other states; (b) I cannot possess a firearm anywhere; (c) If I am presently on probation or parole whether state or federal, the fact that I have been convicted may be used to revoke my probation or parole regardless of what sentence I receive on this case; (d) If I am convicted of any crime in the future, whether state or federal, this conviction may be used to increase that sentence; (e) I may have to disclose the fact that I am a convicted felon when applying for employment and such disclosure may result in my not getting some jobs and having difficulty in getting others. [If I have been convicted of certain drug offenses, my conviction may result in my losing entitlement to certain federal benefits pursuant to the Anti-Drug Abuse Act of 1988.] I understand that this list may not include all of the adverse consequences of my conviction in this case.

(9) I understand that I can plead "NOT GUILTY" to any or all offenses charged against me, and continue to plead "NOT GUILTY", and that if I choose to plead not guilty, the Constitution guarantees me (a) the right to a speedy and public trial by jury; (b) the right not to testify and no implication of guilt would arise by my failure to do so; (c) the right to be presumed innocent until such time, if ever, that the government proves my guilt beyond a reasonable doubt to the satisfaction of a court and jury; (d) the right to see and hear all the witnesses and to cross-examine any witness who may testify against me; (e) the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses, in my favor; and to testify in my own behalf if I choose to do so; (f) the right to have the assistance of counsel in my defense at all stages of the proceedings; (g) if I am convicted at such trial I have the right to appeal with a lawyer to assist me and the appeal will not cost me any money if I am indigent. I understand that if the Court accepts my plea that there will be no jury trial and that I will be convicted of the count(s) to which I plead just as if a jury found me guilty of the charge(s) following a trial and that the Court may impose sentence upon me within the limits set forth in the plea agreement stated in paragraph (13), subject to the maximum punishments set forth in paragraph (5).

(10) No officer or agent of any branch of government (federal, state of local), nor any other person, has told me what sentence I will receive. If there are any agreements between myself and my lawyer and the prosecution concerning my plea they are fully set forth in paragraph (13) below. I understand that even with a plea agreement no person can bind the Judge to give any particular sentence in my case and that if the Judge rejects an agreement pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) or (C) I will be offered the opportunity to withdraw my guilty plea. If the Judge rejects a recommendation made pursuant to Rule 11(c)(1)(B) I have no right to withdraw my plea. I understand that if the Judge decides to make a recommendation about where I should serve any incarceration, that the recommendation is not a promise or a guarantee, but only a

recommendation and is not binding on the Bureau of Prisons which will make the final decision (after I am sentenced) about where I will be incarcerated.

(11) My lawyer has done all the investigation and research in this case that I have asked him/her to do, and has reviewed with me the discovery material provided by the Government. I am satisfied with his representation at this point.

(12) Fully understanding my rights to plead "NOT GUILTY" and fully understanding the consequence of my plea of guilty, I wish to plead "GUILTY" and respectfully request the Court to accept my plea as follows: Guilty

(13) This plea is result of a plea agreement and I understand this plea is offered subject to the provisions of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

I offer my plea of "GUILTY" freely and voluntarily and of my own accord; also my lawyer has explained to me, and I feel and believe I understand this petition and the plea agreement.

(14) I am not under the influence of either drugs or alcohol.

(15) I request the Court to enter now my plea of "GUILTY" as set forth in paragraph (12) of this petition, in reliance upon my statements made in this petition.

(16) Recognizing that the Court may reserve acceptance of this plea pending the receipt of the pre-sentence report, I agree that the pre-sentence report may be disclosed to the United States Attorney, my counsel and myself, prior to the sentencing hearing.

Signed by me in open court under the penalties of perjury in the presence of my lawyer, this the 15 day of Aug, 2014.

KYLE OAKLEY, DEFENDANT

ACKNOWLEDGMENT OF GOVERNMENT ATTORNEY

The maximum punishment, plea and plea agreement (if any) are accurately stated above.

ATTORNEY FOR GOVERNMENT

CERTIFICATE OF COUNSEL

The undersigned, as attorney and counselor for KYLE OAKLEY hereby certifies as follows:

(1) I have read and fully explained to KYLE OAKLEY all the accusations against him in this case;

(2) To the best of my knowledge and belief each statement set forth in the foregoing petition is in all respects accurate and true;

(3) In my opinion the plea of "GUILTY" as offered by KYLE OAKLEY, in paragraph (12) of the foregoing petition, is voluntarily and understandingly made; and I recommend to the Court that the plea of "GUILTY" be accepted and entered as requested in paragraph (12) of the foregoing petition.

Signed by me in open court in the presence of KYLE OAKLEY, this 1st day of Aug, 2014.

R.N. "BO" TAYLOR
ATTORNEY FOR THE DEFENDANT

## ORDER

Good cause appearing therefore from the foregoing petition of the foregoing named defendant and the certificate of his counsel and for all proceedings heretofore had in this case, it is ORDERED that the petition be granted and the defendant's plea of "GUILTY" be accepted and entered as prayed in the petition and as recommended in the certificate of counsel.

Done in open court this 1st day of Aug, 2014.

JUDGE SHARP

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:13-00097-16 |
| v. | ) | |
| | ) | Judge Sharp |
| [16] KYLE OAKLEY | ) | |

**PLEA AGREEMENT**

The United States of America, through David Rivera, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney Brent A. Hannafan, and defendant, Kyle Oakley, through defendant's counsel, R.N. "Bo" Taylor, and governed in part by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

**Charges in This Case**

1. Defendant acknowledges that he has been charged in an indictment with conspiring to possess with the intent to distribute and to distribute Oxycodone, a Schedule II controlled substance, Hydromorphone, a Schedule II controlled substance, Oxymorphone, a Schedule II controlled substance, and Buprenorphine, a Schedule III controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. Defendant has read the charges against him contained in the indictment and those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

**Charge to Which Defendant is Pleading Guilty**

3. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment.

**Penalties**

4. The parties understand and agree that the offenses to which defendant will enter a plea of guilty carry the following maximum penalties. A term of imprisonment which may not be more than twenty years, a fine not to exceed $1,000,000, a supervised release term of at least three years, and a special monetary assessment of $100.

**Acknowledgments and Waivers Regarding Plea of Guilty**

**Nature of Plea Agreement**

5. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in Case No. 3:13-00097.

6. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

a. If defendant persisted in a plea of not guilty to the charge against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charge beyond a reasonable doubt;

and that it must consider each count of the indictment against defendant separately.

c. If the trial was held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e. At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

7. Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Factual Basis**

8. Defendant will plead guilty because he is in fact guilty of the charges contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

**a.** Beginning on a date unknown, but not later than in or about July 2010, and continuing thereafter until May 29, 2013, in the Middle District of Tennessee and elsewhere, **[1]**

**KENNETH EDWARD STAFFORD, [2] KAYCEE ANNE BREEDEN, [3] RASHAD WOODSIDE a/k/a "GOMA", [4] NICHOLAS ADAM YOUNG a/k/a "NICK, [5] MICHAEL ANTHONY JORDAN a/k/a "BILLY BOB", [6] RONNIE DUSTIN E. MCCULLOCH a/k/a "DUSTIN", [7] DERECK SCOTT WEATHERSPOON, [8] WILLIAM CHAD NIXON a/k/a "CHAD", [9] MICHAEL CHAD CORLEY a/k/a "CHAD", [10] PHILLIP WAYNE ALLEN, [11] FLETCHER DENNING, [12] AMANDA NICOLE MEYERS, [13] TAMMY BRISTOW, [14] ANTHONY LEE COLLINS, JR. a/k/a "TJ", [15] MARCY JO PICKLER, [16] KYLE OAKLEY, [17] AMY NICHOLE MURPHY, [18] CAITLIN MICHELLE GIBSON a/k/a "KATIE BUG", [19] JAMES LESTER MASSEY, [20] THOMAS ROBERTS, [21] ROBERT ANTHONY TAYLOR a/k/a "TONY", [22] SAMMIE LANETTE CRUTCHER, [23] PETER LEWIS, [24] RYAN MOORE a/k/a "RHINO"** did combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to unlawfully, knowingly, and intentionally possess with intent to distribute and to distribute Oxycodone, a Schedule II controlled substance, Hydromorphone, a Schedule II controlled substance, Oxymorphone, a Schedule II controlled substance, and Buprenorphine, a Schedule III controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

b. In 2010 and 2011, the Lebanon Police Department ("LPD") was investigating the drug trafficking activities of the lead defendant, **KENNETH EDWARD STAFFORD**. During their investigation, the LPD received information that **STAFFORD** was distributing thousands of Roxicodone pills and other diverted narcotic prescription pills a week. In July and August, 2010, the LPD used a confidential source to make three controlled purchases of Roxicodone from

**STAFFORD**.

c. In October 2012, the LPD conducted a search warrant in regards to drug trafficking at the residence of a person who thereafter became a confidential source (CS-1). In late October and early November, 2012, CS-1 worked as a paid informant. CS-1 advised Agents he had purchased Roxicodone and Opana pills from defendant **NICHOLAS ADAM YOUNG** hundreds of times since 2010. **YOUNG** had told CS-1 that **YOUNG** had traveled to Florida to obtain Roxicodone to bring back and sell in the Lebanon, Tennessee area.

d. In November and December 2012, CS-1 worked with Agents of the Drug Enforcement Administration ("DEA") and made three controlled purchases from **YOUNG**. The controlled purchases were set up through a series of recorded text messages and calls between CS-1 and **YOUNG**. CS-1 wore a recording device and was under surveillance by Agents during each of the controlled purchases. CS-1 purchased a total of 45 Opanas for $1,975 from **YOUNG**. Based upon what **YOUNG** said in the text messages, recorded calls, and during the recorded meetings with CS-1, Agents believed that **YOUNG** had multiple sources of supply for the pills he was distributing. The phone **YOUNG** used when dealing with CS-1 was the first phone for which the DEA sought and received approval for a Title III wiretap over YOUNG's telephone.

e. In December 2012, United States District Court Chief Judge William J. Haynes, Jr. of the Middle District of Tennessee authorized the interception of wire and electronic communications occurring over TARGET TELEPHONE 1, which was used by **YOUNG** to facilitate **YOUNG**'s drug trafficking activities. Based upon the interceptions over that wiretap and related surveillance, as well as interceptions over subsequent wiretaps of phones used by seven other defendants, the DEA ultimately obtained wiretaps on nine other cells phones – TARGET

TELEPHONES 2, 3, 4, 5, 6, 7, 8, 9, and 10 (collectively the "TARGET TELEPHONES"). All ten wiretaps, and a renewal of TARGET TELEPHONE 6, were authorized by Chief Judge Haynes.

f. The wiretap aspect of this investigation spanned approximately six months and included tens of thousands of intercepted conversations (via wire interceptions) and text messages (via electronic interceptions) over the TARGET TELPHONES. All of the wiretaps were for both conversations and text messages over each of the phones. The ten TARGET TELEPHONES, the defendants who were the primary users of those phones, and the approximate periods of interception are as follows:

TARGET TELEPHONE 1, **YOUNG** – December 2012 - January 2013

TARGET TELEPHONE 2, **JORDAN** – January – February 2013

TARGET TELEPHONE 3, **WEATHERSPOON** – January – February 2013

TARGET TELEPHONE 4, **MCCULLOCH** – February – March 2013

TARGET TELEPHONE 5, **ALLEN** – March – April 2013

TARGET TELEPHONE 6, **CORLEY** – March – May 2013

TARGET TELEPHONE 7, **STAFFORD** – March – April 2013

TARGET TELEPHONE 8, **BREEDEN** – April – May 2013

TARGET TELEPHONE 9, **STAFFORD** – April – May 2013

TARGET TELEPHONE 10, **BREEDEN** – May 2013 – June 2013

Hereinafter, the references to the TARGET TELEPHONES will be abbreviated as "TT#," as in "TARGET TELEPHONE 1" will be referred to as "TT1."

g. Based on the information obtained in the wire and electronic interceptions, as well as accompanying surveillance, each of the users of the TARGET TELEPHONES was identified through surveillance which Agents performed on them and their co-defendants or other customers, typically in relation to drug-related transactions referenced during intercepted communications.

h. Defendant **OAKLEY** was intercepted over TT4 and was identified during surveillance based upon interceptions over TT4. Based upon the interceptions over TT4, **OAKLEY** both supplied pills to and bought pills from **MCCULLOCH**. For example, there were texts such as **OAKLEY** telling **MCCULLOCH** that he was trying to sell pills. **OAKLEY** indicated he could get the "old ones" (meaning the prior version of Opanas) for "55" ($55 apiece). When **MCCULLOCH** asked, "Old what?" **OAKLEY** replied, "Moons" (a slang term for Opanas). **OAKLEY** had also texted that "if you got someone that wants them I can still get 15 of them." He was also seen on surveillance as he drove **MCCULLOCH** while **MCCULLOCH** distributed pills.

i. For the purposes of determining the applicable advisory sentencing range under the United States Sentencing Guidelines, the parties agree that, after converting the diverted prescription pills for which the defendant is responsible as relevant conduct into kilograms of marijuana pursuant to United States Sentencing Guidelines Section 2D1.1, the total amount of marijuana for which the defendant is responsible is at least 40 but less than 60 kilograms, which results in a base offense level of 20 pursuant to U.S.S.G. Section 2D1.1.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to



Case 3:13-cr-00097 Document 586 Filed 08/01/14 Page 12 of 22 PageID #: 1525

defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

**Sentencing Guidelines Calculations**

9. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2013.

10. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

a. **Offense Level Calculations.**

i. The base offense level for defendant's relevant conduct is 20, pursuant to U.S.S.G. Section 2D1.1.

ii. Pursuant to Section 3B1.2, because the defendant was a minor participant in the conspiracy, his offense level is decreased by 2 levels.

iii. Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for

trial and permitting the government and the Court to allocate their resources efficiently.

iv. Based on evidence now known to the government, the government believes that U.S.S.G. § 5Cl.2 and Title 18, United States Code, Section 3553(f) appear to be applicable. Therefore, subject to the following sentence, the government agrees to recommend that the Court shall impose a sentence in accordance with the Sentencing Guidelines without regard to any statutory minimum sentence, and the offense level shall be reduced by two levels, pursuant to Section 2D1.1(b)(16).

v. Based on the Attorney General's memorandum dated March 13, 2014, the policy of the Department of Justice, and the proposed amendments to the U.S.S.G. which recommend a two level reduction in the offense level for all drug offenses, the parties agree that a two level reduction in the offense level is appropriate.

vi. The parties agree that no additional upward or downward adjustments of defendant's offense level are appropriate except as with respect to his cooperation as described below.

b. **Criminal History Category**. The parties have no agreement as to defendant's criminal history. However, based upon information provided by the defendant, the parties anticipate that his Criminal History Category will be Category I.

c. **Recommended Offense Level**. Therefore, the parties agree to recommend to the Court a final offense level of 11 (the "**Recommended Offense Level**"). Defendant understands that the offense level as ultimately determined by the Court prior to any downward departure (the "court-determined offense level)" may be different from the **Recommended Offense Level**. Defendant likewise understands that the guidelines range as

ultimately determined by the Court prior to any downward departure (the "court-determined guidelines range") may be based on an offense level different from the **Recommended Offense Level**.

Defendant is aware that the **Recommended Offense Level** is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the guidelines calculations of the parties, defendant will have no right to withdraw his guilty plea.

**<u>Cooperation</u>**

11. Defendant agrees to cooperate fully and truthfully with the United States and to provide all information known to him regarding any criminal activity. In that regard:

a. Defendant agrees to respond truthfully and completely to any and all questions that may be put to him, whether in interviews, before a grand jury, or at any trials or other court proceedings.

b. Defendant agrees to be reasonably available for debriefings and pre-trial conferences as the United States may require.

c. Defendant agrees to produce voluntarily any and all documents, records, writings, or materials of any kind in his possession or under his care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

d. Defendant consents to continuances of his sentencing hearing as requested by the United States.

12. Nothing in this Plea Agreement requires the government to accept any cooperation or assistance that defendant may choose to proffer. The decision as to whether and how to use any information and/or cooperation that defendant provides (if at all) is in the exclusive discretion of the United States.

13. Defendant must at all times give complete, truthful, and accurate information and testimony, and must not commit, or attempt to commit, any further crimes. Defendant understands that if he falsely implicates an innocent person in the commission of a crime, or exaggerates the involvement of any person in the commission of a crime in order to appear cooperative, or if defendant falsely minimizes the involvement of any person in the commission of a crime in order to protect that person, then defendant will be in violation of the Plea Agreement. Should the United States determine that defendant has failed to cooperate fully, has intentionally given false, misleading, or incomplete information or testimony, has committed or attempted to commit any further crimes, or has otherwise violated any provision of this Plea Agreement, the United States, may in its discretion and as appropriate in light of particular circumstances: (1) prosecute defendant for perjury, false declarations or statements, and obstruction of justice; (2)

prosecute any other crime alleged in the information that would have otherwise been dismissed at sentencing; (3) charge defendant with other crimes; and (4) recommend a sentence up to the statutory maximum.

14. This Plea Agreement is not conditioned upon charges being brought against any other individual. This Plea Agreement is not conditioned upon any outcome in any pending investigation. This Plea Agreement is not conditioned upon any result in any future prosecution that may occur because of defendant's cooperation. This Plea Agreement is conditioned upon defendant providing full, complete, and truthful cooperation.

15. If the United States in its sole discretion determines that defendant has cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise complied with the terms of this Plea Agreement, prior to sentencing the government shall file a motion pursuant to U.S.S.G. § 5K1.1 and/or Title 18, U.S.C., Section 3553(e) with the Court setting forth the nature and extent of defendant's cooperation. Defendant understands that at the time this Plea Agreement is entered, no one has promised that a substantial assistance motion will be made on defendant's behalf.

16. The United States cannot, and does not, make any promise or representation as to what sentence defendant will receive. The United States will inform the Probation Office and the Court of (a) this Plea Agreement; (b) the nature and extent of defendant's activities with respect to this case and all other activities of defendant that the United States deems relevant to sentencing; and (c) the nature and extent of defendant's cooperation.

## Agreements Relating to Sentencing

17. This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). The parties agree that the sentence imposed by the Court shall be a sentence of time-served, the one day of imprisonment on the date of defendant's arrest, followed by three years of supervised release. That sentence is below the Recommended Guidelines Range but the parties agree that sentence is sufficient but not greater than necessary pursuant to the factors in Title 18, U.S.C., Section 3553(a). The recommendation for a sentence of time-served is based upon defendant's history, role in the offense, and immediacy of his cooperation. Other than that agreed terms of incarceration and supervised release, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed terms of incarceration and supervised release set forth herein, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose the agreed terms of incarceration, fine, and supervised release, thereby rejecting the Plea Agreement, or otherwise refuses to accept defendant's plea of guilty, either party shall have the right to withdraw from this Plea Agreement.

18. Defendant agrees to pay the special assessment of $100 at or before the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

19. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The

government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

20. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

21. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

**Entry of Guilty Plea**

22. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea.

## Waiver of Appellate, Collateral Attack, and Post-Conviction Rights

23. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his sentence if a sentence of one day imprisonment and a term of supervised release of three years is imposed. Likewise, the government waives the right to appeal if a sentence of one day imprisonment and a term of supervised release of three years is imposed.

24. Defendant also knowingly waives the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241, and/or 18 U.S.C. § 3582(c). As noted above, the parties agreed to recommend that the defendant receive a two point reduction in the offense level based on the proposed amendments to the U.S.S.G., even though the amendments have not been approved and the expected effective date of any amendment would be November 1, 2014. In return for this recommendation of a reduction in the guidelines, defendant specifically agrees that he is not entitled to any further reduction in his sentence in the future should the U.S.S.G. be amended to reduce the base offense level for drug offenses. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.

## Other Terms

25. Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government, at its option, may void this Plea Agreement.

## Conclusion

26. Defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

28. Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

29. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

30. Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 8/1/14

Kyle Oakley
Defendant

31. Defense Counsel Signature: I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 8/1/14

R.N. "Bo" Taylor

Respectfully submitted,

David Rivera
United States Attorney

By:
Brent A. Hannafan
Assistant U.S. Attorney

By:
Harold B. McDonough
Deputy Chief